IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN CALVIN WHITE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-4793 |
| | : | |
| CAROLYN W. COLVIN | : | |
| *ACTING COMMISSIONER OF THE* | : | |
| *SOCIAL SECURITY ADMINISTRATION* | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                **March 29, 2016**

Plaintiff Norman Calvin White seeks review of the Commissioner of Social Security's denial of his application for Disability Insurance Benefits and Supplemental Security Income. United States Magistrate Judge Linda K. Caracappa has issued a Report and Recommendation recommending White's request for review be denied. In his objections to that Report and Recommendation, White takes issue with the Magistrate Judge's resolution of all the issues raised in his initial request for review. Upon de novo review of White's objections, the Court agrees with White that the Administrative Law Judge (ALJ) did not appropriately account for all of White's impairments when assessing his residual functional capacity (RFC) and posing hypothetical questions to the vocational expert. Consequently, the Court will sustain that objection and remand this matter to the Commissioner of Social Security for further proceedings consistent with this Memorandum Opinion. As for the remainder of White's objections, the Court finds them without merit and will overrule them.

**DISCUSSION**

In a March 22, 2012, decision, an ALJ applied the Social Security Administration's five-step sequential evaluation process for determining whether an individual is disabled, *see* 20 C.F.R. § 404.1520, and concluded White was not disabled at any time during the relevant

period.[1] While the ALJ found White suffered from several severe impairments—a lumbar spine disorder, an affective disorder, and an anxiety disorder—she concluded these impairments did not meet or medically equal any impairments in the Listing of Impairments. *See* R. at 22-23. After considering the record, including White's medical records, and hearing testimony from both White and a vocational expert, the ALJ concluded White retained the RFC to perform sedentary level work—work generally performed while sitting and never requiring lifting in excess of ten pounds—and was limited to unskilled work, with routine, repetitive tasks and no frequent changes in setting. *Id.* at 26.

In his request for review, White argues the ALJ's decision is not supported by substantial evidence because the ALJ erred by (1) rejecting the opinion of his treating physician, Dr. Ulhas Mayekar, (2) misinterpreting and failing to consider GAF scores, and (3) failing to include limitations when determining White's residual functional capacity (RFC) and in the hypothetical questions posed to the vocational expert. White further argues remand is warranted for consideration of new evidence. White essentially renews the same arguments in his objections to the Magistrate Judge's Report and Recommendation.

---

[1] The Commissioner uses the same five-step process to determine whether an individual is disabled in both SSI and DIB cases. *See* 20 C.F.R. §§ 404.1520 (SSI), 416.920 (DIB). The Commissioner must first determine whether the claimant is currently engaging in substantial gainful activity. If so, the claimant is not disabled. Second, the Commissioner must determine whether the claimant has a severe, medically determinable physical or mental impairment. If the answer to this question is "no," the claimant is not disabled. At the third step, the Commissioner must determine whether the claimant's severe impairment meets or is medically equivalent to an impairment listed in Appendix I to Subpart P of 20 C.F.R. Part 404. If so, the claimant is disabled. If not, the Commissioner must assess the claimant's residual functional capacity (RFC) to determine, at the fourth step, whether the claimant can perform her past relevant work. If so, the claimant is not disabled. If not, the claimant will be found to be disabled unless the Commissioner demonstrates, at the fifth step, that the claimant is capable of performing other available work. *See Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001) (describing the five-step sequential evaluation process).

Under 28 U.S.C. § 636(b)(1), this Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." The role of the court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988).

White first objects to the Magistrate Judge's finding that the ALJ properly gave Dr. Mayekar's March 17, 2011, medical source statement little weight when determining White's functional limitations. He further argues the Magistrate Judge erred by not crediting Dr. Mayekar's opinion that White's condition meets 12.03 of the Listing of Impairments; failing to consider evidence of White's pain; and improperly rejecting Dr. Mayekar's medical source statement because it was a check-box form. Correspondingly, White objects to the Magistrate Judge's conclusion that the ALJ appropriately gave great weight to the opinion of Dr. Peter Garito, PhD, the non-examining state consultant.

In determining whether a claimant is disabled, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). The weight due a medical opinion depends on a variety of factors, including whether the source of the opinion examined or treated the claimant, the quality of the explanation the source provides, the length of a treatment relationship and frequency of examinations, the degree the opinion is supported by other evidence, and how consistent the opinion is with the record. *See id.* § 404.1527(c)(1)-(4). As the ALJ recognized, a treating physician's opinion is entitled to special significance; indeed, when supported by objective medical evidence and consistent with other substantial evidence in the record, it receives controlling weight. *See id.*; *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). The ALJ, however, is not bound by a treating physician's opinion regarding a claimant's RFC or whether his disabilities meet a Listing: These findings are reserved to the Commissioner. *See* 20

C.F.R. § 404.1527(d)(1)-(2); *see also Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011) ("The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."); *Stremba v. Barnhart*, 171 F. App'x 936, 938 (3d Cir. 2006) ("[T]he ALJ has final responsibility for the determination of whether a claimant's impairments meets or equals the requirement of any impairments [in the Listings]."). If a treating physician's opinion conflicts with or is contradicted by substantial evidence, the court is not required to give it controlling weight, *see Horst v. Comm'r of Soc. Sec.*, 551 F. App'x 41, 46 (3d Cir. 2014), and if it "conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit," *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000).

White argues the Magistrate Judge erred by finding the ALJ's decision to accord limited weight to Dr. Mayekar's medical source statement was supported by substantial evidence. The Court disagrees. The ALJ explained she credited Dr. Garito's evaluations over the Dr. Mayekar's because Dr. Garito provided concrete reasons for White's limitations grounded in the record. R. at 24. In contrast, the ALJ discounted Dr. Mayekar's medical source statement opinion indicating White suffered from marked functional limitations in the activities of daily living and social functioning caused by his mental impairments because "he apparently bases these limitations on the claimant's complaints of back pain, with no professional balance or objectivity." R. at 24. The ALJ further opined these limitations were unsupported by Dr. Mayekar's treatment notes, which indicate only routine medication checks, and White's hearing testimony about his functioning in those areas.

As the ALJ observed, Dr. Mayekar's treatment notes reflect only routine treatment. *See* R. at 382-409. While Dr. Mayekar indicates White's mood is dysphoric at each visit, he also repeatedly describes White as neat; alert and oriented; having no delusions or hallucinations;

4

having normal and appropriate thoughts with no suicidal or homicidal ideation; showing no evidence of recent or remote memory impairment; and displaying fair insight and judgment. *See* R. at 382, 384, 386, 388, 390, 392, 394, 396, 398, 400, 402, 404, 406, 408. At White's first visit, Dr. Mayekar prescribed Cymbalta and Xanax to treat his depression and anxiety. *Id.* at 382. Because White was still anxious, at the next visit Dr. Mayekar increased the dose for each medication. *Id.* at 384. At each visit thereafter, Dr. Mayekar renewed White's prescriptions at the increased doses. *See id.* at 386-409. Dr. Mayekar's notes do record White's complaints about back pain, but they do not reflect treatment that suggests White's *mental* impairments would cause marked limitations in certain areas, as indicated on the medical source statement. Accordingly, the Court agrees with the Magistrate Judge that the ALJ's decision to only afford limited weight to Dr. Mayekar's opinion is supported by substantial evidence.

While White argues the Magistrate Judge erred by according Dr. Mayekar's statement limited weight because it was a check-box form, the Court finds no evidence the ALJ relied upon this reasoning when discounting Dr. Mayekar's opinion and thus no need to address that argument. White also argues the Magistrate Judge erred by failing to assess the medical evidence of chronic pain before discounting Dr. Mayekar's references to that pain and, therefore, failing to consider White's impairments in combination when determining his disability status. But upon review of the ALJ's decision, the Court finds this argument without merit, as it is clear the ALJ did in fact assess the medical evidence in the record when discounting Dr. Mayekar's opinion and determining White's disability. *See, e.g.*, R. at 24 (indicating Dr. Mayekar's finding of marked limitations based on back pain seemed without objectivity); *id.* at 26-27 (assessing White's pain, physical impairments, and psychological impairments in light of the medical record and hearing testimony).

The Court also finds no error in the ALJ's reliance on Dr. Garito's opinion, even though he did not review Dr. Mayekar's medical source statement and only reviewed White's first two visits to Dr. Mayekar. While White argues Dr. Garito's opinion reflects limited information, a consulting physician's report need not be updated with later findings unless the ALJ determines new evidence has been received that could change the consultant's findings. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Here, the ALJ expressly stated the new evidence received after he received Dr. Garito's report did not support more than moderate psychological limitations. R. at 24.

White next objects to the Magistrate Judge's finding that remand was not required despite the ALJ's consideration of only his initial GAF score of 50, but not 12 subsequent GAF scores of 50. A GAF score is a "numerical summary of a clinician's judgment of [an] individual's overall level of functioning." *Rivera v. Astrue*, No. 12-6622, 2014 WL 1281136, at *7 (E.D. Pa. Mar. 27, 2014) (alterations in original) (quoting American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) (hereinafter DSM-IV-TR)). GAF scores are considered reliable medical evidence and should be addressed by an ALJ in making a disability determination. *See Watson v. Astrue*, No. 08-1858, 2009 WL 678717, at *5-7 (E.D. Pa. Mar. 13, 2009) (citing cases). Scores range from zero to one hundred, *see Lozado v. Barnhart*, 331 F. Supp. 2d 325, 330 n.2 (E.D. Pa. 2004), and a score of 50 denotes serious symptoms or a serious impairment in functioning, *see* DSM-IV-TR 34.

An ALJ's failure to address every single GAF score, however, does not mandate remand. *See Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 535-36 (3d Cir. 2011) (holding no remand was warranted when an ALJ failed to reference two GAF scores because the ALJ used a GAF score she believed reflected the claimant's symptoms and aligned with her overall judgment);

*Gilroy v. Astrue*, 351 F. App'x 714, 716 (3d Cir. 2009) (noting remand was not necessary even though the ALJ did not explicitly reference claimant's one-time GAF score of 45, because the ALJ repeatedly referenced the treating physician report's report and the treating physician did not explain the basis for the score). *Cf. Irizarry v. Barnhart,* 233 F. App'x 189, 192 (3d Cir. 2007) (remanding matter for further proceedings when ALJ only discussed one GAF score and not two other lower scores found by a particular treating physician).

 This case is more akin to *Gilroy* than to *Irizarry*. The *Irizarry* court remanded because the ALJ not only failed to discuss the claimant's GAF scores, but also omitted any discussion of the claimant's treatment by a particular physician. Together, these omissions constituted a failure to "consider all relevant evidence or explain his reject of medical evidence," such that his decision was not supported by substantial evidence. 233 F. App'x at 192. In contrast, the ALJ here explained she discounted White's initial GAF score because there was nothing in Dr. Mayekar's notes for that day supporting such a low score. *See* R. at 24. As explained above, Dr. Mayekar's notes described White's mental state as fairly constant during treatment. Thus, although the ALJ failed to expressly address White's 12 subsequent GAF scores of 50, her explanation of why she discounted the initial score is sufficient to explain why she discounted the other scores, despite her failure to expressly comment on them. *See Gilroy*, 351 F. App'x at 716.

 White argues a long line of district court cases require remand when an ALJ fails to explicitly address GAF scores in the 41-50 range. *See Sojourner v. Astrue*, No. 09-5662, 2010 WL 4008558, at *5 (E.D. Pa. Oct. 12, 2010) (listing cases); *West v. Astrue*, No. 09-2650, 2010 WL 1659712, at *5 (E.D. Pa. Apr. 26, 2010) (same). But as the district court recognized in *Rios v. Astrue*, many of these cases "addressed an utter failure by an ALJ to address GAF scores at all or involved similar disparities between the GAF scores discussed by an ALJ and those which

were rejected unduly or without discussion." No. 09-5004, 2010 WL 3860458, at *8 (E.D. Pa. Sept. 30, 2010), *aff'd*, *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532 (3d Cir. 2011). In *Rios*, the ALJ discussed only one GAF score out of three scores. The court determined the failure was harmless, as the undiscussed scores corroborated the findings of the treating physician and did "nothing to overcome the lack of evidence of marked limitations or periods of decompensation." *Id.* at *8. Likewise, because the ALJ here expressly explained why she discounted the initial GAF score and the treating physician's opinion, her failure to consider additional GAF scores that were consistent with the initial GAF score is harmless error at most and does not warrant remand. *See id.*; *see also Rivera v. Astrue*, 9 F. Supp. 3d 495, 506-97 (E.D. Pa. 2014) ("A failure to discuss GAF scores does not necessarily constitute error where the ALJ conducts a thorough analysis of the medical evidence regarding plaintiff's mental impairments."); *Bracciodieta–Nelson v. Comm'r of Soc. Sec.*, 782 F. Supp. 2d 152, 165 (W.D. Pa. 2011) ("An ALJ's failure to include a GAF score in his or her discussion is considered to be harmless error where a claimant has not explained how the GAF score would have itself satisfied the requirements for disability in light of potentially contradictory evidence on record.")

White next objects that the Magistrate Judge erred in concluding the ALJ's decision was based on substantial evidence because the ALJ failed to engage in a function-by-function assessment of White's work-related abilities when determining his RFC and failed to include White's use of a cane and his limitations in concentration, persistence, or pace in her RFC determination and the hypothetical question posed to the vocational expert.

At step four of the sequential evaluation process, the ALJ must determine a claimant's RFC and determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. § 404.1520(e), (f). In making this assessment, the ALJ must consider

all evidence before him or her. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F. 3d 112, 121 (3d Cir. 2000) (noting also the ALJ must expressly explain why she discounts certain record evidence). The Court agrees with the Magistrate Judge that the ALJ's analysis of White's RFC was supported by substantial evidence. Here, the ALJ questioned White as to his previous jobs and the kind of work he performed at each. R. 42-45. Thus, the record shows the ALJ specifically considered White's exertional and nonexertional capacities for work, as required by SSR 96-8p. *See id.*; *see also Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162 (3d Cir. 2008) (holding an ALJ's duty to perform a function-by-function analysis is satisfied by an ALJ questioning claimant as to the work performed in prior jobs and accounting for those answers in determining a claimant's RFC). And, after considering White's physical impairments—including pain—and his psychological impairments, the ALJ explained why she discounted certain record evidence when determining White's RFC, noting the limitations reported by Dr. Mayekar and White were inconsistent with White's own testimony about his activities of daily living and the medical evidence as to both his physical and mental impairments. The ALJ thus concluded White could perform a range of sedentary work, in spite of his musculoskeletal impairments and psychological limitations: that is, he could perform work which is generally performed while sitting and never requires lifting in excess of ten pounds, and could only occasionally balance, stoop, kneel, crouch, crawl, and climb stairs and ramps, but could never climb ladders, ropes, or scaffolds. *Id.* She further limited White to unskilled work with retained, repetitive tasks and no frequent changes in the work setting. *See id.* 61-63.

Even if the ALJ had failed to perform a function-by-function assessment, remand is not warranted where substantial evidence supports the ALJ's determination of a claimant's RFC, as it does here. *See Holmes v. Comm'r of Soc. Sec. Admin.*, No. 13-7616, 2016 WL 944147, at *5

(E.D. Pa. Mar. 14, 2016) ("[C]ourts in the Third Circuit have found that, where the ALJ's determination is accompanied by a sufficient explanation, remand is not necessary for a failure to include a function-by-function analysis before determining the correct exertional category." (citing *Bencivengo v. Apfel*, No. 99-6135, 2000 WL 875684 (E.D. Pa. June 14, 2000), *aff'd*, 251 F.3d 153 (3d Cir. 2000)). *Cf. Cichoki v. Astrue*, 729 F.3d 172, 176-77 (2d Cir. 2013) (failing to conduct explicit function-by-function analysis does not require remand so long as the ALJ applied the correct legal standards and made a determination supported by substantial evidence).

The Court, however, agrees with White that the hypothetical question posed to the vocational expert inadequately accounted for his moderate limitations in concentration, persistence or pace, and his use of a cane. In order for a vocational expert's answer to a hypothetical question to be considered substantial evidence, the hypothetical must reflect all of a claimant's impairments that are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). The ALJ found White suffered from a moderate impairment in concentration, persistence, or pace. R. at 25. She further acknowledged White's daily use of a cane and did not discredit his need for its use outside the home. *Id.* at 46. But when posing hypothetical questions to the vocational expert, the ALJ did not expressly reference either finding. *See id.* at 60 (limiting White to light work with occasional climbing of ramps and stairs, but not of ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; avoidance of exposure to hazards; and unskilled work with retained, repetitive tasks with no frequent changes in work setting); *id.* at 61 (limiting White to sedentary work with the same other conditions as the first hypothetical). Neither of these questions encompasses all of the limitations the ALJ credited to White, and accordingly, the ALJ's conclusion that a significant number of jobs exist in the national economy that White can perform is not supported by

substantial evidence. *See Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (holding hypothetical limiting a claimant to "one to two step tasks" did not adequately encompass a finding that the claimant "often" had deficiencies in concentration, persistence, or pace); *Trout v. Astrue*, No. 10-6539, 2011 WL 3652500, at *16 (E.D. Pa. July 28, 2011) (limiting claimant to "unskilled work" did not reflect claimant's moderate limitation in maintaining concentration, persistence, or pace); *Deitz v. Astrue*, No. 06-5053, 2008 WL 577000, at *10 (D.N.J. Feb. 29, 2008) (limiting claimant to the performance of simple tasks did not encompass her moderate limitations in maintaining concentration and task persistence); *Corona v. Barnhart*, 431 F. Supp. 2d 506, 515 (E.D. Pa. 2006) (posing hypothetical to the vocational expert without mentioning claimant's mental impairments or use of a cane rendered the vocational expert's assessment flawed). *But see McDonald v. Astrue*, 293 F. App'x 941, 946-47 & n.10 (3d Cir. 2008) (limiting claimant's work to "simple, routine tasks" while avoiding "noise extremes and bright or sudden light changes" adequately accounted for claimant's moderate limitations in ability to maintain concentration, persistence and pace, and distinguishing *Ramirez* because that claimant had a more severe pace limitation). Upon remand, the Commissioner should consider whether White can work in the national economy based on all his credited impairments.

White also asks for remand so the Commissioner may consider new evidence. A court may "order additional evidence to be taken . . . , but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Szubak v. Sec. of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) ("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern . . . the subsequent deterioration of the previously non-disabling condition). The Court

agrees with the Magistrate Judge's finding that the new evidence presented by White is not material, as it did not relate to the time period for which benefits were denied. Thus, the Court adopts the reasoning set forth by the Report and Recommendation as to this objection.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.